VERNA B. JENSEN and ORVILLE H. JENSEN, Appellants, *v.* UNITED AIR LINES TRANSPORT CORPORATION, Respondent.

First Department, December 23, 1938.

*Robert G. Page* of counsel [*Carl McGowan* with him on the brief; *Debevoise, Stevenson, Plimpton & Page*, attorneys], for the appellants.

*John F. Ward* of counsel [*Joseph F. Murray* with him on the brief; *Malcolm G. Bibby*, attorney], for the respondent.

GLENNON, J.   Plaintiffs commenced this action under a statute of the State of Utah to recover for the wrongful death of their brother, who was killed when one of defendant's airplanes on which he was a passenger crashed near Salt Lake City.   Plaintiff Verna B. Jensen " is, and has been since prior to the arising of the cause of action here sued upon, a resident of the State of New York."   Her brother, the coplaintiff, resides in Minnesota.

The defendant United Air Lines Transport Corporation is a Delaware corporation engaged in conducting a transcontinental airline system.   Its main office and principal place of business is located in Chicago, Ill.

Defendant has appeared specially for the purpose of challenging the jurisdiction of the court to entertain the action.   It claims that it is not doing business in the State of New York and that, even if it is, to compel it to defend in New York would impose an undue burden on interstate commerce.

A brief summary of the many activities in which defendant engages in New York city will make it very apparent that it is doing business there.   Defendant holds itself out as a common carrier by air, engaged in the transportation of passengers and luggage between New York city and other points.   While defendant's airplanes regularly land at and take off from Newark Airport, defendant schedules Floyd Bennett Field, on Long Island, as an alternate airport for use in case landing at Newark is inadvisable because of weather or other conditions.   Defendant has led the public to believe that New York city is the eastern point of origin and termination of a flight.   Mere perusal of the excerpts from its time tables, advertising pamphlets and newspaper advertising indicates these facts.

The defendant maintains its main business office and passenger station in New York city in the Lincoln Building at 58 East Forty-second street. It displays its name in prominent letters on an electric sign across the front of its premises. It is listed in the building directory and in the New York Telephone Directory. On its letterheads it describes its New York office as a " District Traffic Office " and its manager as a " District Traffic Manager."

At this office defendant maintains a staff of employees, makes reservations, sells tickets and takes care of refunds. It has a bank account here. More than this, however, the defendant actually conducts a passenger station in its premises in the Lincoln Building. It maintains a fully-equipped waiting room. Defendant's employees examine tickets of departing passengers and prepare flight manifests showing the names, addresses, destination of passengers and their ticket numbers. They check baggage through to passengers' destinations. They arrange for the transportation of passengers to the Newark Airport, at a small additional charge, in large limousines prominently marked with defendant's name on the side and rear. It is true that the limousines carry on the side in smaller letters a statement that they are owned and operated by the Grand Central Cadillac Renting Corporation. However, the drivers of the limousines wear uniforms bearing only the name of defendant. Transportation in these cars is arranged by defendant's employees. These cars with defendant's name and insignia attached thereto are used to transport the defendant's passengers from New York to its airports.

Thus defendant does far more than merely solicit business in New York city. Consequently, it is subject to service of process here, and there remains for consideration only the question whether, under the circumstances, a suit between the parties in a New York court is an unreasonable burden on interstate commerce.

The rule to be applied in transitory actions involving the subject of a burden on interstate commerce has been definitely settled by two recent decisions, *International Milling Co.* v. *Columbia Transportation Co.* (292 U. S. 511) and *Matter of Baltimore Mail S. S. Co.* v. *Fawcett* (269 N. Y. 379). In the latter case Judge LEHMAN wrote:

" In the recent case of *International Milling Co.* v. *Columbia Transportation Co.* (292 U. S. 511) a similar contention was made by a carrier engaged in interstate commerce, and in the opinion of the court by Mr. Justice CARDOZO all the intervening decisions of the Supreme Court have been collated. In all these cases the test has been whether the exercise of jurisdiction by a State court of the subject of a transitory action brought against a foreign corporation engaged in interstate commerce, would impose a serious

and unreasonable burden upon interstate commerce. In course of time, by process of inclusion and exclusion, the standard or measure to be applied has become clearer. The group of cases where the exercise of jurisdiction has been denied, and the group where jurisdiction has been sustained ' are clearly marked, and also the reasons for the grouping.' * * *

" A repetition of the analysis of the cases there collated would serve no purpose. In none of these cases did the court base its decision upon any single factor. In the cases where jurisdiction was denied, the cause of action arose in another State, the defendant was an interstate railroad, which had no tracks and did no business other than soliciting traffic in the State where it, was sued, and the plaintiff at the time, the cause of action arose was not a resident of that State."

In the present case, one of the two plaintiffs is a *bona fide* resident of this State, and was a resident when the cause of action arose. Residence of a plaintiff is one of the important factors to be considered. In the *International Milling Co.* case (*supra*), Mr. Justice CARDOZO wrote (at p. 519): " we do not hold that the residence of the suitor will fix the proper forum without reference to other considerations, such as the nature of the business of the corporation to be sued. *Denver & Rio Grande Western R. Co.* v. *Terte* [284 U. S. 284] is opposed to such a holding. Residence, however, even though not controlling, is a fact of high significance. Our next inquiry must be whether there is anything in the nature of the activities of the defendant to overcome its force."

Defendant is engaged in more than the solicitation of business in this State. " It was [is] engaged * * * in the very act of transportation, the dominant end and aim of its corporate existence." (*International Milling Co.* v. *Columbia-Transportation Co.*, *supra*, at p. 520.)

In the light of these circumstances, the case at bar falls directly within the group where jurisdiction should be entertained by a State court. It is immaterial that defendant's chief witnesses on the trial reside in other States. This very point was made by the carrier in the *International Milling Co.* case and was decided adversely to it. Furthermore, in view of the nature of the defendant's business, little or no time would be lost in the transportation of the witnesses who reside outside the State of New York.

We conclude, therefore, that the plaintiffs were well within their rights in instituting their action in the State of New York.

The order and judgment should be reversed, with costs, and the motion denied, with leave to the defendant to answer within twenty days after service of a copy of the order to be entered hereon, with notice of entry thereof, upon payment of said costs.

MARTIN, P. J., DORE, COHN and CALLAHAN, JJ., concur.

Judgment and order unanimously reversed, with costs, and the motion denied, with leave to the defendant to answer within twenty days after service of order upon payment of said costs.