## CANADIAN PAC. RY. CO. v. SULLIVAN et al.

### No. 3689.

Circuit Court of Appeals, First Circuit.
March 2, 1942.

See, also, 22 F.Supp. 95.

Richard W. Hall, of Boston, Mass., for appellant.

Edward B. Hanify, of Boston, Mass. (Henry W. Lawlor and Richard B. Johnson, both of Boston, Mass., H. William Radovsky, of Fall River, Mass., and Ropes, Gray, Best, Coolidge & Rugg, of Boston, Mass., on the brief), for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, JJ.

WOODBURY, Circuit Judge.

One of the two actions of tort consolidated for this appeal was brought by Dennis and Margaret Sullivan, as ascendent heirs, to recover for the death of their daughter Annie who was killed when an automobile she was driving was struck by one of the defendant's locomotives on a grade crossing in Yamachiche in the Province of Quebec, Dominion of Canada. The other was brought by Margaret Sullivan individually to recover for personal injuries sustained by her in the same accident.

Both actions were commenced by trustee process in which the New York, New Haven and Hartford Railroad Company and the Boston and Maine Railroad were named as trustees.[1] The writs in each case were returnable in the Superior Court of the Commonwealth of Massachusetts for Bristol County, the County in which the decedent was and the plaintiffs are bona fide life-long residents. After service of process on the trustees in the usual way, the writs were served on the Commissioner of Corporations of the Commonwealth of Massachusetts, as agent of the defendant for service of process, in accordance with the provisions of Massachusetts General Laws (Ter.Ed.) c. 181, § 3,[2] which, so far as material, is copied in the margin.

---

[1] The New Haven Railroad, as trustee, answered that at the time of the service of the plaintiffs' writ upon it all of its properties were in the possession of, and were being operated by, trustees appointed by the District Court under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, and the plaintiffs discharged it.

The Boston and Maine Railroad, as trustee, eventually disclosed that at the time of service upon it, it was indebted to the principal defendant for traffic balances in the sum of $33,962.54, and, after verdicts for the plaintiffs, it was charged in that amount.

[2] G.L.(Ter.Ed.) C. 181, § 3. "Commissioner to be appointed attorney for service of process. Every foreign corporation, which has a usual place of business in this commonwealth, * * * shall, before doing business in this commonwealth, in writing appoint the commissioner and his successor in office to be its true and lawful attorney upon whom all lawful processes in any action or proceeding against it may be served, and in such writing shall agree that any lawful process against it which is served on said attorney shall be of the same legal force and validity as if served on the corporation, and that the authority shall continue in force so long as any liability remains outstanding against the corporation in this commonwealth. * * *"

The defendant is a Canadian corporation and the District Court found that "Years ago, the defendant in writing appointed the Commissioner of Corporations and Taxation and his successor in office as its attorney upon whom all lawful process might be served, and agreed that the process so served should be of the same force as if served on the corporation. This appointment was never revoked."

After entry, the defendant, appearing specially, moved to dismiss each case for lack of service. Thereafter, but seasonably, the defendant still appearing specially, filed answers in abatement denying the jurisdiction of the court, answers on the merits, and petitions to remove the actions into the United States District Court for the District of Massachusetts on the ground of diversity of citizenship and an amount in controversy, exclusive of interest and costs, in excess of the statutory amount.

The petitions to remove were granted and the District Court, after hearing, overruled the defendant's motions to dismiss and answers in abatement. A trial by jury thereafter, in which the actions were consolidated, resulted in a verdict for the plaintiffs in the first action for $8,000 and one for the plaintiff in the second action for $2,000. The District Court ordered personal judgments on these verdicts and the defendant appealed. The points upon which it relies are that the court below "erred in ruling that service on the Commissioner of Corporations was valid to subject this defendant to the jurisdiction of the courts of the Commonwealth of Massachusetts or the courts of the United States for the District of Massachusetts", and that the court also erred in denying its motions for directed verdicts, for judgments notwithstanding the verdicts, and for new trials.

The service of process upon the Commissioner of Corporations as agent for the principal defendant was made in the way provided by the statute. This appears to be conceded, and we therefore proceed directly to the jurisdictional question involved, which, in this case, is a two-fold one. It is, first, did the Massachusetts legislature intend its statute to apply to cases like the present in which recovery is sought on a cause of action which not only arose outside the Commonwealth, but which also was wholly unconnected with any business done there by a defendant;

and, second, if the legislature did so intend, can the statute be constitutionally applied to this defendant? We address ourselves first to the question of the scope of the statute.

This is a question of state law (Pennsylvania Fire Ins. Co. v. Gold Issue Mining Co., 243 U.S. 93, 37 S.Ct. 344, 61 L. Ed. 610; see also Davis v. Farmers' Co-operative Co., 262 U.S. 312, 43 S.Ct. 556, 67 L. Ed. 996; Louisville & Nashville R. R. Co. v. Chatters, 279 U.S. 320, 325, 49 S.Ct. 329, 73 L.Ed. 711) which, although direct authority appears to be lacking, we believe should be answered in the affirmative. We base our conclusion upon the decision of the Massachusetts Supreme Judicial Court in Johnston v. Trade Insurance Co., 132 Mass. 432, and also upon the decisions of that court construing § 38 of c. 223 of the Massachusetts General Laws to be referred to hereafter.

In Johnston v. Trade Insurance Company, the court had before it an action by a citizen of Delaware against a New Jersey corporation to recover upon a policy of insurance issued in Pennsylvania upon property situated in Delaware. Service in the action had been made upon the insurance commissioner of Massachusetts under a statute, with which the defendant had complied, requiring foreign insurance companies, before doing business in Massachusetts, to appoint the insurance commissioner their attorney "upon whom all lawful processes, in any action or proceeding against the company, may be served with like effect as if the company existed in this Commonwealth." The court, after holding that the plaintiff, although a non-resident might sue in Massachusetts, construed the above quoted statute as broad enough to authorize service in transitory actions brought to recover on a contract even though the contract was made and the property to which it related was situated in another state. This holding persuades us that the same court would construe the language of the statute under which service was made in the case at bar as broad enough to authorize service in transitory actions of tort brought against a foreign corporation to recover on a cause of action which arose outside the Commonwealth and was not in any way connected with the corporation's local business.

This view is reinforced by the Massachusetts cases construing Section 38 of c.

223 of the General Laws of Massachusetts (Ter.Ed.).[3]  This statute provides an alternative method for service of process upon foreign corporations and the Massachusetts Court has held that service under it may be made in cases which not only arose outside of the state, but which also did not arise out of any business transacted locally. Reynolds v. Missouri, Kansas & Texas Ry. Co., 228 Mass. 584, 117 N.E. 913; Trojan Engineering Corp. v. Green Mountain Power Corp., 293 Mass. 377, 383, 200 N.E. 117.  Thus, if in the case at bar service had been made upon Hart (he was the manager of the defendant's local office), it would have been good under the statute providing for such service. The Massachusetts Court so held in Stein v. Canadian Pacific Ry. Co., 298 Mass. 479, 11 N.E.2d 457, a case in principle on all fours with the one before us.  This being so, there is every reason to believe that the Massachusetts Court would hold that service in a similar case made upon the Commissioner of Corporations, as was done in the case at bar under § 3, of c. 181, would also be valid. We see no reason why one method of service should be held to be valid in actions like the present and the alternative method of service should not.  The foregoing considerations lead us to believe that the Massachusetts Court would interpret the statute under consideration to include actions like the present in so far as constitutional limitations permit.  Thurman v. Chicago, M. & St. P. Ry. Co., 254 Mass. 569, 151 N.E. 63, 46 A.L.R. 563.

This brings us to the constitutional questions involved, and these questions are still open to the defendant in spite of its having designated the Commissioner of Corporations as its agent to receive service, as required by the Massachusetts statute.  "It is established that a corporation, by seeking and obtaining permission to do business in a state, does not thereby become bound to comply with, or estopped from objecting to, the enforcement of its enactments that conflict with the Constitution of the United States."  Quaker City Cab Co. v. Pennsylvania, 277 U.S. 389, 400, 401, 48 S.Ct. 553, 554, 72 L.Ed. 927; Power Mfg. Co. v. Saunders, 274 U.S. 490, 47 S.Ct. 678, 71 L.Ed. 1165.

Two constitutional provisions are involved,—the due process clause and the commerce clause.  We shall consider the applicability of the due process clause first.

In Green v. Chicago, Burlington & Quincy Ry. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, the Supreme Court of the United States held that under this clause a foreign corporation could not be subjected to suit in a state in which it did business only to the extent of employing a local agent whose only duty was to solicit business to be transacted elsewhere.  But this case, if it is still the law (see International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Hutchinson v. Chase & Gilbert, Inc., 2 Cir., 45 F.2d 139, 141), is not in point for the reason that the defendant in the case at bar did more in Massachusetts than merely to solicit. With respect to the nature and extent of this business the District Court made the following findings:

"The defendant called Louis R. Hart, on whose testimony I find that as an employee of the defendant, in charge of its passenger office in Boston, his duties were to solicit passenger business for the defendant, to supervise a staff of solicitors, to make up, issue and receive money for tickets, and to arrange for the transportation of passengers.  He conferred with local ticket agents of other companies concerning travel and accommodations, gave them advice regarding these matters, and strove to direct travel from all New England over the defendant's lines.  All money received by him was deposited in a bank to the defendant's account and he had no power to withdraw it.  He received his salary from the defendant.  Payroll and all other bills contracted by his office, including the office rent, were sent to and paid from the defendant's Montreal office.  Complaints as to transportation and service were sometimes received by him and, where the payment of no money was involved, sometimes terminated as a result

[3] G.L.(Ter.Ed.) C. 223, § 38.  "Service on foreign corporations.  In an action against a foreign corporation, * * * which has a usual place of business in the commonwealth, or, with or without such usual place of business, is engaged in, or soliciting business in the commonwealth, permanently or temporarily, service may be made in accordance with the provisions of the preceding section relative to service on domestic corporations in general, instead of upon the commissioner of corporations and taxation under section three of chapter one hundred and eighty-one."

of conferences with the complainants. Complaints of greater importance were forwarded to the Montreal office. The defendant had its name listed in the Boston telephone directory, and it also maintained a freight office in Boston which was in charge of another employee.

"The defendant maintained tracks in Canada, which entered the United States and there crossed state lines. It had no tracks in Massachusetts. When its cars came here over the lines of the Boston & Maine Railroad, they were manned by the latter's employees."

■ From these findings it is evident that the defendant's agent in Massachusetts, in addition to the solicitation of business, actually sold tickets, arranged for the transportation of passengers, conferred with other local ticket agents, and adjusted claims if no payment of money was involved. Furthermore, the defendant maintained a freight office in Boston. In our view, the business done by the defendant's agent in Massachusetts was essentially similar to the business done by the defendant's agent in New York in the case of St. Louis Southwestern Ry. Co. v. Alexander, 227 U.S. 218, 33 S.Ct. 245, 57 L.Ed. 486, a case in which the Supreme Court of the United States held that there was personal jurisdiction over the defendant in that state. See also Missouri, Kansas & Texas Ry. Co. v. Reynolds, 255 U.S. 565, 41 S.Ct. 446, 65 L.Ed. 788. From the foregoing we conclude that the defendant's rights under the due process clause have not been infringed. Cf. Pennsylvania Fire Insurance Co. v. Gold Issue Mining Co., 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610; Robert Mitchell Furniture Co. v. Selden Breck Construction Co., 257 U.S. 213, 42 S.Ct. 84, 66 L.Ed. 201.

The serious constitutional question on this appeal arises under the commerce clause.

■■ We must assume that the defendant did only an interstate business in Massachusetts, but it has long been settled that the fact that the business carried on by a corporation in a state is wholly interstate in character does not render the corporation immune from the ordinary process of the courts of that state. International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Davis v. Farmers' Co-operative Co., 262 U.S. 312, 316, 43 S.Ct. 556, 67 L.Ed. 996. And it is equally well established that traffic balances arising out of transactions in interstate commerce are not immune from seizure by attachment or garnishment proceedings or, what is the same thing, under trustee process. Davis v. C., C., C. & St. Louis Ry. Co., 217 U.S. 157, 30 S.Ct. 463, 54 L.Ed. 708, 27 L.R.A.,N.S., 823, 18 Ann.Cas. 907; Atchison, Topeka & Santa Fe Ry. Co. v. Wells, 265 U.S. 101, 103, 44 S.Ct. 469, 68 L.Ed. 928; see also International Milling Co. v. Columbia Transportation Co., 292 U.S. 511, 521, 54 S.Ct. 797, 78 L.Ed. 1396.

■ The question in cases of this sort is not whether the requirement that a foreign carrier shall submit to suit in a state imposes some burden upon interstate commerce; it is whether that requirement imposes an unreasonable burden upon such commerce. State of Missouri ex rel. St. Louis, B. & M. Ry. Co. v. Taylor, 266 U.S. 200, 207, 45 S.Ct. 47, 69 L.Ed. 247; International Milling Co. v. Columbia Transportation Co., supra. To solve this question no verbal formula is available. Each case must be considered as it arises, and prior decisions of the Supreme Court of the United States in cases involving the question are our only authoritative guides.

Cases falling upon either side of the line are numerous, but we do not feel called upon to consider each one of them in detail because the case of Davis v. Farmers' Co-operative Co., 262 U.S. 312, 43 S.Ct. 556, 67 L.Ed. 996 and International Milling Co. v. Columbia Transportation Co., 292 U.S. 511, 54 S.Ct. 797, 78 L.Ed. 1396, indicate the line of demarcation between burdens upon interstate commerce which are unreasonable and those which are not, and in the opinion in the latter case the earlier decisions are fully analyzed and compared.

In the Davis case [262 U.S. 312, 43 S.Ct. 557, 67 L.Ed. 996] the court stated the facts before it as follows:

"The Atchison, Topeka & Santa Fe Railway Company is a Kansas corporation engaged in interstate transportation. It does not own or operate any railroad in Minnesota; but it maintains there an agent for solicitation of traffic. In April, 1920, suit was brought by another Kansas corporation in a court of Minnesota against the Director General of Railroads, as agent, on a cause of action arising under federal con-

trol. Service was made pursuant to the Minnesota statute.[4] The recovery sought was for loss of grain shipped under a bill of lading issued by the carrier in Kansas for transportation over its line from one point in that state to another. So far as appears the transaction was in no way connected with Minnesota or with the soliciting agency located there."

Since the court concluded that, applied to the above facts, the Minnesota statute imposed an unreasonable burden upon interstate commerce, it saw no occasion to consider any question arising under the Fourteenth Amendment. But, in connection with its consideration of the question under the commerce clause, the court was careful to point out that:

"It may be that a statute like that here assailed would be valid, although applied to suits in which the cause of action arose elsewhere, if the transaction out of which it arose had been entered upon within the state, or if the plaintiff was, when it arose, a resident of the state. These questions are not before us, and we express no opinion upon them."

In the International Milling Company case the plaintiff was a Delaware corporation which maintained its principal office and place of business in Minnesota, and the defendant, a carrier by water, was also a Delaware corporation, but it maintained its principal place of business in Ohio. The action under consideration was brought in Minnesota to recover for negligence in handling a cargo of grain shipped by the plaintiff from Chicago to Buffalo in one of the defendant's boats. It appeared that some of the defendant's boats at times navigated Minnesota waters and occasionally touched at Minnesota ports. Suit was begun by writ of attachment under which one of these boats was seized while unloading in Minnesota waters. Service was made upon the master of the vessel. The court held that under these circumstances no unreasonable burden was imposed upon interstate commerce by subjecting the defendant to suit in the state of Minnesota.

It might be suggested that this latter case may be distinguished from the case at

bar on the ground that the defendant therein, in the course of its business, sometimes navigated its vessels in waters within the jurisdiction of the state of Minnesota and occasionally entered Minnesota ports, while in the instant case the defendant had no line and operated no trains in Massachusetts. But, in view of the apparent assumption in both cases that the Davis case goes to the verge of the law, and in view of the stress laid upon the residence of the plaintiff in the state of the forum in both the Davis and the International Milling Co. cases, we believe that this distinction is immaterial under the facts here presented. This is not to say that the fact that a plaintiff resides in the state of the forum conclusively answers the question of jurisdiction. The cases of Michigan Central R. R. Co. v. Mix, 278 U.S. 492, 49 S.Ct. 207, 73 L.Ed. 470, and Denver & Rio Grande Western R. R. Co. v. Terte, 284 U.S. 284, 52 S.Ct. 152, 76 L.Ed. 295, are opposed to this view. However, in both of these latter cases the plaintiffs were not lifelong residents of the state in which action was brought as the plaintiffs were in the case at bar.

In both the Mix and Terte cases the plaintiffs only became residents there after their cause of action had arisen, and in the Mix case [278 U.S. 492, 49 S.Ct. 209, 73 L.Ed. 470] the court said: "Here the plaintiff had become a resident in Missouri after the injury complained of, but before instituting the action. For aught that appears, her removal to St. Louis shortly after the accident was solely for the purpose of bringing the suit, and because she was advised that her chances of recovery would be better there than they would be in Michigan."

■ The constitutional question in the case at bar is not free from doubt. But, considering the reasoning in the Davis and International Milling Co. cases [292 U.S. 511, 54 S.Ct. 799, 78 L.Ed. 1396], the quotation from the former, and the statement in the latter that residence of the plaintiff in the forum "even though not controlling, is a fact of high significance", we conclude that no unreasonable, and therefore unconstitutional, burden was placed upon

[4] The court quotes this statute as follows: "Any foreign corporation having an agent in this state for the solicitation of freight and passenger traffic or either thereof, over its lines outside of this state, may be served with summons by delivering a copy thereof to such agent."

the defendant by subjecting it to suit in Massachusetts.

We come now to the merits of the cases.

Each action was submitted to the jury on two counts, one alleging common-law negligence in general terms, and the other alleging legal fault in that the defendant's servants in charge of the locomotive, as it approached the crossing, failed to sound either whistle or bell as required by Section 308, subsection 1 of the Canadian Railways Act. The defendant in its answer denied both of these allegations of fault, and in addition asserted that at the time of alleged accident neither the decedent nor the plaintiff Margaret were themselves in the exercise of due care. At the close of the plaintiffs' evidence and again at the close of all the evidence, the defendant moved for a directed verdict in each action. As to the first count of each declaration, it based its motions on the ground that there was no evidence of the defendant's negligence, and on the ground that the evidence conclusively established that the sole cause for the accident was the contributory negligence of the plaintiff's intestate. As to the second count its motions were based "on the ground that by a great preponderance of substantial evidence, it appears that the engine's whistle was blown and the bell was rung."

We are not here concerned with the question of contributory negligence for the reason that counsel for both parties stipulated at the trial that under the law applicable to these cases contributory negligence is not a bar to recovery by the plaintiffs but serves only to reduce or mitigate the damages which they might otherwise recover. Therefore the only question raised by the defendant's motions for directed verdicts is whether or not there is in the record evidence from which reasonable men might conclude that the defendant's agents, (a) were guilty of causal negligence in the manner in which they operated the train; (b) were guilty of causal fault in failing to sound the statutory signals.

In considering these question the defendant, without citing any authorities, asserts that it is only necessary for us to consider Mrs. Sullivan's testimony "because the question of negligence is to be determined solely from her testimony and which phase of her testimony the jury believes." We are aware of no rule requiring us to consider only part of the record in cases of this sort. While it is true that a party is bound by his own testimony with respect to subjective matters concerning which he could not honestly be mistaken, we know of no authority which applies the same rule to testimony concerning objective matters about which he might honestly be in error. In passing upon motions for directed verdicts the law to the effect that appellate courts must consider the testimony as a whole and view it in the light most favorable to the plaintiff is too well established to require the citation of authorities.

Viewing the evidence in this way, it appears that the accident happened on a clear summer day about 1:30 o'clock in the afternoon. The crossing upon which it occurred is in flat open country near the outskirts of a small agricultural community. The tracks at that point run approximately east and west, and the highway, as it crosses the tracks, runs approximately northeast and southwest. The locomotive involved approached the crossing from the east. The plaintiffs' automobile approached it from the southwest. The decedent was driving, and her mother, who knew nothing about the operation of an automobile, was sitting beside her on the front seat.

It appears that from the direction in which the plaintiff and the decedent approached the crossing there was, from a point on the highway 350 feet from the crossing and from that point up to the crossing, an open view along the tracks in the direction from which the train approached for a distance of some three thousand feet, at which point the defendant's right of way curved to the south. According to Margaret's testimony the decedent brought her car to a stop about ten or twelve feet before the front end of it reached the nearest rail. At that point both she and her daughter looked in both directions along the tracks and listened. Seeing and hearing nothing, the decedent then put the car in motion, but when the front end of it reached a point just over the nearest rail it stalled. The decedent attempted to start it again but failed, and the defendant's locomotive struck it before either of its occupants alighted.

The determinative factual question arising under the first count in each declaration is: how long was the automobile stalled on the crossing before it was hit?

The defendant argues the cases in large part upon the assumption that the only evidence is that the automobile was hit almost instantly after it entered upon the crossing. While there is evidence to this effect it is not uncontradicted. The plaintiff Margaret testified that the automobile was stalled on the crossing for about half a minute before it was hit, and an impartial witness testified that it was stationary on the crossing "a considerable time", "a matter of minutes", before the collision. If the jury accepted this testimony as true, even in substance, it is clear that they might have found that the decedent drove her automobile on to the crossing before the train came into view around the curve, and this finding is corroborated by Margaret's testimony that she and her daughter saw and heard nothing when they stopped, looked and listened, before driving on to the tracks. Clearly if the automobile stalled on the tracks before the train rounded the curve, then it must have been in the view of either the engineer or fireman continuously from the time the locomotive came around the curve three thousand feet away. This being so, the jury, in view of the well known fact that drivers do not halt their automobiles on crossings unless compelled to do so by mechanical failure, might well have found that the engineer and fireman as men of ordinary prudence ought to have brought their train to a stop, or at least slowed it down and given the occupants of the automobile time to escape, before proceeding on to the crossing.

The defendant attempts to answer this argument by pointing out that there is no evidence in the record as to the distance within which the train could have been stopped. Under the circumstances disclosed this answer is inadequate. If the jury should find that the train could not have been stopped in the distance between the curve and the crossing they would be warranted in concluding either that the train was being operated at an excessive speed or else that its brakes were defective. In the event of either of these findings the conclusion would be warranted that the defendant was negligent. In short, from the evidence before us the jury could have found that if the train could have been stopped it should have been, and, if it could not have been stopped, the defendant was negligent either in running its train too fast or in operating it with defective brakes.

Although neither the engineer nor the fireman were called to the stand there was ample evidence that as the locomotive approached the crossing its whistle and bell were sounded in accordance with the statute and the rules of the railroad. The only testimony having any tendency to contradict this was that of the plaintiff Margaret herself. She testified that her hearing was good; that the windows of the car were open; that there was nothing to distract her attention or interfere with her hearing; and that she listened for sounds indicating the approach of a train but heard no warning whistle until just before the collision.

The defendant contends that her testimony is inadequate to support a finding that the whistle and bell were not sounded. We cannot agree.

The applicable rule was stated years ago by the Supreme Judicial Court of Massachusetts in the case of Menard v. Boston & Maine Railroad, 150 Mass. 386, 387, 23 N.E. 214, in the following language:

"Ordinarily, all that a witness can say, in such a case, when called to prove that a bell was not rung, is that he did not hear it. Such a statement, with no accompanying facts, is mere negative, and of no value as evidence. But attending circumstances may be shown which make the statement strong affirmative evidence. It may appear that all the attention of which the witness was capable was concentrated on the effort to ascertain whether the bell was rung, and his failure to hear it could only have been because it made no sound. A witness may be in any conceivable attitude of attention or inattention, which will give his evidence value, or leave it with little or no weight. But where his position is such that the sound would have been likely to have attracted his attention, if the bell had been rung, his failure to hear it is some evidence that there was no ringing."

This language has frequently been cited and referred to with approval by the Massachusetts Courts. Applying the rule which it establishes to the facts before us we find no error in submitting the second counts to the jury. The plaintiff testified that she was in a position to hear, was able to hear, and was trying to hear, but heard nothing. Under the rule this evidence gives her testimony sufficient probative force to take the issue to the jury.

The defendant argues, however, that if it should be found, as we have held it might be, that the decedent drove her car onto the crossing before the train rounded the curve, then the failure to whistle as the statute required, that is, at a point 1,380 feet from the crossing, could not be found to have caused the decedent to drive onto the tracks. This argument is good as far as it goes, but the fact remains that a whistle sounded as the statute required, instead of at a point 500 feet from the crossing as Margaret testified, could be found to have been sufficient not only to cause the occupants of the car to alight but also to give them an opportunity to do so, and thus escape injury.

We find no error in the refusal of the District Court to grant the defendant's motions for judgments notwithstanding the verdicts and for new trials.

The judgments of the District Court are affirmed with costs to the appellees.