### VAN HORN v. WATERMAN S. S. CORPORATION.

Civil Action No. 2546.

District Court, E. D. Pennsylvania.

Aug. 28, 1944.

For former opinion, see 54 F.Supp. 376.

Freedman & Goldstein, of Philadelphia, Pa., for plaintiff.

Rambo, Rambo & Knox, of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

I have come to the conclusion that I was wrong in directing the dismissal of this complaint.

Assuming that the defendant's vessels which called at the port of Philadelphia during the years 1940 and 1941 were actually time chartered to the Pan-Atlantic Steamship Company—and there is serious doubt whether the testimony of Mr. Von Herbulis was based on adequate knowledge and was sufficiently definite to support the fact finding upon that point—I think I erred in concluding that, when the ships put in at Philadelphia to load and unload, the transportation business accomplished by them was solely the business of the Pan-Atlantic Company. It is quite true that after the charters were made the defendant had nothing whatever to do with where the ships should go or what ports they should visit; but the defendant did not go out of the business of transportation when it time chartered its vessels to Pan-Atlantic. Transportation was "the dominant end and aim of its corporate existence." (International Milling Co. v. Col. Transp. Co., 292 U.S. 511, 520, 54 S.Ct. 797, 78 L.Ed. 1396) after, as well as before, its contract with Pan-Atlantic. Being in that business through the instrumentality of its ships, masters and crews, it entered into a re-

348

lation with Pan-Atlantic by which it gave Pan-Atlantic the right to say where and when and how it, the defendant, should carry it on. The arrangement contemplated Atlantic coastwise traffic and did not exclude any port on the Atlantic coast. Consequently when Pan-Atlantic directed that one of the defendant's ships come to Philadelphia it was directing the defendant to transport goods in one of a large number of ports to which the defendant had impliedly, by its blanket arrangement, consented to in advance.

I do not mean to say that Pan-Atlantic was not also in the business of transportation. There is no reason to assume, as I did, that the business of transportation conducted in this fashion must have been entirely the business of either one of the two companies. There could have been, and I think undoubtedly that there was, a division of the business between them.

The same general considerations apply to the year 1942 in which the suit was brought. The vessels belonging to the defendant were "requisitioned" by the United States War Shipping Administration some time after Pearl Harbor and before the institution of this action. The requisition did not take the form of a seizure of the ships by the government. The defendant's ships were chartered (a number by time charter) in much the same way that they would have been in the case of a private charterer. Of course, had the defendant refused to enter into the relationship and operate the vessels, they could, and no doubt would, have been seized. If that had occurred the defendant clearly would not have had anything to do with the ships calling at Philadelphia and would not have been doing business there. But the vessels were not seized and the case must be judged upon what the situation actually was, and I think that the defendant was still in the business of transportation although under contract with the government, and that part of that business was conducted at the port of Philadelphia.

The order heretofore entered dismissing the complaint is vacated and the motion to dismiss is now denied.