**PERHAM FRUIT CORPORATION et al. v. CUNARD WHITE STAR, Limited, et al.**

Nos. 368–371.

United States District Court
E. D. Washington, S. D.

May 14, 1949.

Ernest Falk, Yakima, Washington, for plaintiffs.

Bogle, Bogle & Gates and Claude E. Wakefield, Seattle, Washington, for defendant Canadian Pac. R. Co.

Hart, Spencer, McCulloch & Rockwood, Portland, Oregon, and Brown & Hawkins, Yakima, Washington, for defendant Spokane, P. & S. R. Co.

A. J. Clynch, Seattle, Washington, for defendant Great Northern R. Co.

Hamblen, Gilbert & Brooke, Spokane, Washington, for defendant Union Pac. R. Co.

Frank J. McKevitt, Spokane, Washington, Dean H. Eastman and Roscoe Krier, Seattle, Washington, for defendant Northern Pac. R. Co.

Clyde C. Rowan, Spokane, Washington, for defendant Canadian Nat. Rys.

Merritt, Summers & Bucey, Seattle, Washington, for defendant Cunard White Star, Limited.

DRIVER, Chief Judge.

The question presented is whether this Court has jurisdiction of defendant, Cunard White Star Limited, a British corporation. The above actions, and two others by different plaintiffs in which the same corporation was named as a defendant, were commenced in State Court and removed for diversity. In each case, summons was served at Seattle, Washington, upon Burchard & Fisken, Inc., a Washington corporation, as agent of the British corporation.

Hereafter, throughout this opinion, plaintiff, Perham Fruit Corporation, will be called "Perham"; defendant, Cunard White Star Limited, will be called "Cunard"; and Burchard & Fisken, Inc., will be referred to as "Burchard".

For the purpose of making a factual summary, cause No. 370 may be taken as fairly representative of the others.[1] Perham, a Yakima, Washington, concern, undertook to ship seven carloads of fresh pears to Glasgow, Scotland. The carriage was to be by rail to an Eastern Canadian Seaport and thence across the Atlantic by Cunard's Steamship, Delilian. There was a delay of about two weeks in loading the pears aboard the vessel. Some of the fruit was rejected as unfit for ocean transportation, and the remainder arrived in Scotland in a deteriorated condition. In its complaint, Perham charges Cunard and the railroad carriers with negligence and seeks to recover damages from all of them.

Prior to World War II, Perham and other shippers had sold a large volume of Washington State fresh fruit in United Kingdom markets. The War stopped the movement, but it was resumed in 1946. Cunard, as an ocean carrier, had participated in this trade, but from 1940 on, it had no office in the State and its vessels made no calls therein for freight or passengers. In the summer of 1946, Cunard appointed an individual agent (succeeded in December of that year by Burchard) to solicit freight and passenger business on a commission basis. From then on, the solicitation was continuous and extensive. A substantial portion of the 1946 Washington apple crop was transported across the Atlantic to European markets in Cunard vessels. The same was true of the Washington pear crop. During the 1946-47 season, Perham, alone, shipped 23 carloads of pears to United Kingdom buyers in vessels owned or operated by Cunard. However, all the fruit was received by Cunard for shipment at Atlantic ports outside of the State of Washington.

The seven carloads of pears involved in case No. 370 were grown and packed in the State of Washington. Five were shipped by rail from warehouses in the State to Eastern Canada. The remaining two carloads were shipped by rail from Portland, Oregon, where they had been placed in storage. Perham engaged cargo space on the Delilian for three carloads through Inge & Company, a freight forwarder of New York City. Freight thereon was not prepaid. Space was engaged for the other four carloads through a Seattle fruit forwarder, Seaport Shipping Company (an agent of Inge & Company before the War). In accordance with the usual practice followed in many similar transactions, the booking for the four carloads was made by Seaport Shipping Company through Burchard as agent for Cunard. The agent first wired the Montreal office of Cunard for authority to book the cargo, then notified Seaport Shipping Company, which, in turn, notified Perham that "the space was firm and definite-

---

[1] The complaint in No. 368 appears to be based upon the same claim as the complaint in No. 370. The same is true of Nos. 369 and 371.

ly reserved." No contract for the transportation of the pears was ever executed other than the exchange of letters and telegrams, requesting and confirming the booking of the cargo space. At the request of Cunard, the railroad bills of lading were delivered to Burchard by Perham, and, after the pears had been placed aboard the Delilian, the ocean bills of lading were delivered to the shipper by Burchard at the direction of Cunard. A check for prepayment of the freight on the four carloads was drawn by Perham, payable to the order of Cunard and delivered to Burchard. After payment and cancellation, the check was returned to the drawer bearing the following stamped endorsement: "Pay to the order of the National Bank of Commerce of Seattle—Burchard & Fisken, Inc.—Cunard White Star Ltd." Refund of freight charges on account of fruit rejected for ocean shipment in the amount of $459.80 was made to Perham by a bank check drawn by Burchard.[2]

Advertisements of Cunard in trade publications list an office of the Company in the Exchange Building, Seattle. The Seattle telephone directory contains a listing of Cunard "Exch. Bldg.—Main 7422." The listing in the same directory for Burchard is "Exch. Bldg.—Main 7419." The lettering on the doors of the rooms in the Exchange Building, occupied by Burchard announce that Burchard is the agent or general agent of Cunard. The printed letterhead of Burchard bears the announcement that it is agent for Cunard and other steamship companies.

It is conceded that Cunard has never been authorized to do business in the State of Washington, has had no statutory agent within the State, has never carried on any intrastate transportation business there, and, since 1940, has not maintained a bank account or kept any assets in the State.

The motions to dismiss challenge the jurisdiction of this Court on a number of grounds. The contentions are that Cunard was not doing business in the State of Washington so as to be subject to process; that Burchard was not an agent of Cunard upon whom valid service could be made; and that to compel Cunard to submit to the local jurisdiction would constitute a denial of due process and impose an unreasonable burden on foreign commerce.

In the absence of consent, a foreign corporation is not amenable to process to enforce a personal liability unless it is doing business in the state where the action is brought and process is served upon an authorized agent of the corporation.[3] The rule is easy to state, but not easy to apply because it is so difficult in close cases to determine what constitutes doing business. It has often been said that there is no rigid, ready-made formula that can be employed to make such a determination and that the outcome of each case must depend upon its own particular facts.[4] Nevertheless, some principles have evolved and one of them, upon which defendant Cunard relies in the present case, is that the mere solicitation of business within a state by a

---

[2] In the two related cases now pending in this court, namely, E. S. Small et al. v. Cunard White Star Limited et al., Nos. 366 and 367, cargo space for all of the fruit was engaged through Inge & Company of New York. Burchard & Fisken, however, communicated with Small by letter and telephone concerning the details of the shipment of the fruit. In case No. 367, Burchard & Fisken delivered the ocean bills of lading to Small; requested in return "a letter to us" guaranteeing surrender to "us" of the rail bills of lading; negotiated with Small for the transfer of three tons of Small's cargo space in a Cunard vessel to another shipper; and made corrections in the ocean bills of lading.

[3] Peterson v. Chicago Rock Island & Pac. Ry. Co., 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841; St. Louis Southwestern Ry. Co. v. Alexander, 227 U.S. 218, 226. 33 S.Ct. 245, 57 L.Ed. 486; Philadelphia & Reading Ry. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L. Ed. 710.

[4] People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 87, 38 S.Ct. 233, 67 L.Ed. 587, Ann.Cas.1918C, 537; International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; St. Louis Southwestern Ry. Co. v. Alexander, 227 U.S. 218, 227, 33 S.Ct. 245, 57 L.Ed. 486.

358

foreign corporation is not sufficient to subject the corporation to state, judicial process.

The "mere solicitation" doctrine was first announced by the Supreme Court in Green v. Chicago, Burlington & Quincy Ry. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, in 1907. In that case, a foreign railroad corporation had no tracks in Pennsylvania and did no business there except to maintain agents for the solicitation of freight and passengers to be carried wholly outside of the State. It was held that the corporation was not doing business within the State so as to be amenable to process.

Seven years later, the Supreme Court decided International Harvester v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 946, 58 L.Ed. 1479. There it was held that a foreign corporation, which maintained in Kentucky agents who took orders that were sent out of the State to be rejected or accepted and filled, was doing business in the State so far as process jurisdiction was concerned. Referring to Green v. Chicago Burlington & Quincy Ry. Co. as "an extreme case," the Court distinguished it on the ground that it involved only mere solicitation of business, while in the International Harvester case there was "something more" than solicitation. The "something more" in the latter case was that in response to the orders taken there was a continuous flow of goods into the State and the corporation's soliciting agents were authorized to receive payment in money, check, or draft for the goods and to take notes payable at local banks.

I shall not undertake to discuss or even to cite the numerous cases in which the courts have applied the "mere solicitation" doctrine of Green v. Chicago, Burlington & Quincy Ry. Co. or the "solicitation plus" rule of the International Harvester case.[5] I shall only briefly comment on the trend of the decisions. The "mere solicitation" doctrine has been questioned and criticized in the later cases and the marked tendency has been to recognize greater jurisdictional power of the states over foreign corpora-

tions. It has taken less and less in the way of additional activities of a foreign corporation's agents to bring solicitation within the doing of business category.[6]

Mr. Justice Rutledge, then an Associate Justice of the Court of Appeals for the District of Columbia, in Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 516, 146 A.L.R. 926, pointed out that the taking of orders is a very important part of the process of selling merchandise, that the merchant, or manufacturer would regard solicitation as the "heart of business," and that the "mere solicitation" doctrine probably should be abandoned in cases where the solicitation "is a regular, continuous and sustained course of business."

In International Shoe Co. v. State, 22 Wash.2d 146, 154 P.2d 801, the Washington Supreme Court, likewise, concluded that solicitation of orders should be sufficient to make a foreign corporation amenable to state process if the solicitation is regular and systematic and results in bringing a continuous flow of the corporation's products into the State by means of interstate carriers. Actually, it should be noted, there was something more than mere solicitation in both Frene v. Louisville Cement Co. and the International Shoe Company case. In the latter, however, the additional activity of the foreign corporation's salesmen within the State of Washington appears to have consisted only of their residing in the State and their renting of sample rooms in business buildings, at the corporation's expense, for the display of samples of merchandise to prospective customers.

 The Supreme Court affirmed the Washington Court in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057. That decision was the culmination of a marked change in the basic legal reasoning employed in dealing with state jurisdiction over foreign corporations. The concept in the early cases was that by engaging in business within a State, a foreign corporation consented to its jurisdiction.[7] Then

---

[5] For a comprehensive review of the authorities, see International Shoe Co. v. State, 22 Wash.2d 146, 154 P.2d 801.

[6] See discussion by Judge L. Hand in

Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139.

[7] See Lafayette Ins. Co. v. French, 18 How. 404, 59 U.S. 404, 15 L.Ed. 451.

followed the "presence" theory. It was said that a foreign corporation was subject to state process if its business activities in the state were such as to warrant the inference that it was present there.[8] The Supreme Court in the International Shoe Company case, enlarging upon the reasoning of Judge L. Hand in Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, 141, called attention to the inept analogy implicit in the "presence" theory. A corporation is a fictitious person which cannot be physically present anywhere. It can manifest its constructive presence only by means of activities carried on for it by its authorized agents. When we speak of presence, therefore, we are merely symbolizing those corporate activities which courts will consider sufficient to meet the demands of due process. Those demands are satisfied "by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government to require the corporation to defend the particular suit which is brought there." Presence, in that sense, has uniformly been recognized "when the activities of the corporation have not only been continuous and systematic, but also give rise to the liabilities sued on."

■ In the International Shoe Company case, the Supreme Court did not formulate any simple, definite rule. On the contrary, it announced that the criteria to be applied cannot be merely mechanical or quantitative. Whether state process jurisdiction may be imposed depends upon "the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." [326 U.S. 310, 66 S.Ct. 160.] By engaging in business within a state, a foreign corporation secures the benefit and protection of the state's laws. If obligations are created which "arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

■ In the present case, defendant Cunard had as its agent in the State of Washington a resident, local corporation. The activities of such agent were not casual or sporadic, but systematic and continuous. Its solicitation of transportation business resulted in directing into the channels of foreign commerce a substantial portion of the fresh fruit grown in the State. The fruit moved in a steady flow and in large volume by interstate rail carriers out of the State to Atlantic seaports, whence it was carried to United Kingdom markets in defendant Cunard's vessels. In addition to solicitation, Burchard the local agent, delivered the ocean bills of lading to the shippers, demanded and received from the shippers the rail bills of lading, collected prepaid freight charges, endorsed and deposited checks in payment of freight, made refunds of freight charges by its own checks, and made corrections in ocean bills of lading. The claims, upon which the complaints are based, arose out of, were related to, or were connected with Cunard's business activities in the State. Applying the broad, general standards outlined by the Supreme Court in the International Shoe Company case, it is my conclusion that it is not unreasonable or violative of traditional concepts of justice and fair play to require Cunard to submit to suit in the State of Washington in the cases here involved.

■ I have not overlooked Cunard's contention that requiring it to try the instant case in the State of Washington would impose an unfair and unreasonable burden. The transactions, out of which plaintiff's claims arose, occurred late in the year, 1946, and involve two of Cunard's steamships which were then sailing from different Canadian Atlantic ports to ports in Scotland and England. Some members of the crews, no doubt, would be necessary witnesses, but how many of them are still in Cunard's employ, the record does not show. Those now employed could not attend a trial as witnesses at any place in either Canada or the United States without interruption of their duties as members

---

[8] See Philadelphia & Reading Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 67 L.Ed. 587, Ann.Cas.1918C, 537.

of the crews of vessels on trans-Atlantic runs. It seems fair to assume that here, as in most admiralty cases, much of the testimony of crew-member witnesses will have to be taken by deposition in any event. If the cases were not tried in the State of Washington, on the other hand, plaintiffs would be at a disadvantage. The fruit was shipped from a number of different storage warehouses. In order to show its condition at the time of shipment, plaintiffs must depend upon the testimony of witnesses, not in their employ, residing in Washington and Oregon. The balance of convenience is not so much in favor of Cunard as to outweigh other factors. Inconvenience to the defendant is an element to be considered, but it is not a controlling one.[9]

It is also my view that Burchard was an agent of Cunard upon whom service or process could be made. The governing Washington statute, Rem.Rev.Stat. § 226, par. 9, provides that service of summons may be made in a suit against a foreign corporation doing business within the state upon "any agent" of the corporation. The words "any agent" have been given a broad construction by the Washington Court. So construed, they do not embrace day laborers or employees without authority to do more than discharge daily tasks. They do include all agents who represent the corporation in either a general or a limited capacity.[10] Burchard was Cunard's sole agent for the transaction of all of its business in the State of Washington. Clearly, the character of the service of process was such as to give rea-

sonable assurance that notice to Cunard would be actual.[11]

There remains for consideration only Cunard's contention that to require it to submit to suit in the State of Washington would impose an unreasonable burden upon foreign commerce. The arguments offered in support of the contention are based on the assumption that the only activity in the State of Washington in which Cunard engaged was the solicitation of business and that the claims sued upon were wholly unrelated to such activity. As above indicated, I have found from the record that the facts are otherwise. The defendant, Cunard, although engaged exclusively in foreign commerce, carried on related activities such as to make it amenable to suit in the State, and the claims set out in the complaints either arose out of or were connected with such activities. Here, moreover, the plaintiffs are residents of the State of Washington. The cases relied upon by Cunard are not in point. In the leading one, Davis v. Farmers' Co-Operative Equity Co., 262 U.S. 312, 43 S.Ct. 556, 67 L.Ed. 996, the plaintiff was not a resident of the State in which the action was brought. The transaction giving rise to the cause of action was not entered into within the State, and the contacts of the defendant with the State were limited to the maintenance there of an agent for the solicitation of traffic.[12] It is my view that with the facts as I have found them to be in the present case, the retention of jurisdiction of defendant Cunard will not impose an unreasonable burden upon foreign commerce.[13]

---

9 Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, 141; International Shoe Co. v. Washington, 326 U.S. 310, 317, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057.

10 International Shoe Co. v. State, 22 Wash.2d 146, 170–172, 154 P.2d 801, and cases cited therein. Cf. State ex rel. Western Canadian Greyhound Lines v. Superior Ct., 26 Wash.2d 740, 175 P.2d 640.

11 International Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057.

12 The other cases, likewise distinguishable, cited by Cunard are Atchison, T. & S. F. Ry. Co. v. Wells, 265 U.S. 101, 44

S.Ct. 469, 68 L.Ed. 928; Michigan Central R. Co. v. Mix, 278 U.S. 492, 49 S. Ct. 207, 73 L.Ed. 470; Denver & R. G. W. R. Co. v. Terte, 284 U.S. 284, 52 S.Ct. 152, 76 L.Ed. 295.

13 See State of Missouri ex rel. St. Louis B. & M. Ry. Co. v. Taylor, 266 U. S. 200, 45 S.Ct. 47, 69 L.Ed. 247, 42 A. L.R. 1232; International Milling Co. v. Columbia Transp. Co., 292 U.S. 511, 54 S.Ct. 797, 78 L.Ed. 1396. In the case last cited, Mr. Justice Cardozo observed 292 U.S. at page 520, 54 S.Ct. at page 799, that even though not controlling, the residence of the plaintiff in the state of the forum "is a fact of high significance."

Defendant Cunard's motions to dismiss will be denied.

For the reasons stated above, the ruling will be the same on defendant Cunard's motions to dismiss in the related cases of E. S. Small et al. v. Cunard White Star Limited et al. now pending in this Court.