## LARKIN et al. v. WASHINGTON LOAN & TRUST CO.

Court of Appeals of District of Columbia.
Submitted January 10, 1929. Decided
March 5, 1929.

No. 4703.

Paul Sleman, of Washington, D. C., for appellants.

Frank S. Bright, R. Preston Shealey, Arthur Peter, and John J. Hamilton, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. This is a suit in ejectment, in which the court below sustained defendant's demurrer to plaintiffs' declaration, and, plaintiffs electing to stand upon the declaration, judgment was entered for defendant (appellee here).

James H. McGill, a subject of Great Britain, was admitted to United States citizenship and thereafter became the owner of certain improved lots in the District of Columbia. He was a resident of the District when naturalized, and subsequently. On May 22, 1908, he died without issue, leaving as his heirs at law his brothers, John McGill and Charles McGill, residents of the city of Toronto, in the province of Ontario, Canada, and subjects of Great Britain.

James H. McGill left a last will and testament, dated October 17, 1906, which was duly admitted to probate and record in the Supreme Court of the District of Columbia on August 17, 1908. By the terms of this will the real estate above mentioned was devised to his wife, Jane L. McGill, for life, with remainder in fee to the corporation of the town of Bowmanville, a municipal corporation of the province of Ontario, Canada. Jane L. McGill died on or about the 13th of December, 1910. In December, 1912, the devisee, the town of Bowmanville, united in a deed with John and Charles McGill and with Isobel Madeline McGill, a niece of the testator, conveying for the use and benefit of the grantors all their right, title, and interest in the devised real estate to the Washington Loan & Trust Company, appellee here.

On December 11, 1925, plaintiffs below, citizens of the United States, claiming to be the lineal descendants of the paternal grandfather of the testator, James H. McGill, instituted this action. They contended that the town of Bowmanville was incapable of taking the real estate by devise, because an alien corporation, and that the brothers of the testator, John and Charles McGill, were incapable of taking title by descent, because nonresident aliens.

As in Cohen v. Cohen, 47 App. D. C. 129, we must look to the Act of March 2, 1897 (29 Stat. 618 [8 USCA §§ 71–77]), to determine the question here at issue. The act of 1897 was amendatory of the Act of March 3, 1887 (24 Stat. 476), entitled "An act to restrict the ownership of real estate in the territories to American citizens, and so forth."

Under the act of 1887 it was made unlawful for any person or persons not citizens of the United States, or who had not lawfully declared their intention to become such, or for any corporation not created under the laws of the United States, or by some state or territory of the United States, thereafter

to acquire, hold, or own real estate so thereafter acquired, or any interest therein, in any of the territories of the United States, or in the District of Columbia, except such as might be acquired by inheritance or in good faith in the ordinary course of justice in the collection of debts *theretofore* created. These prohibitions were not to apply to cases in which the right to hold or dispose of lands in the United States was secured by existing treaties to the citizens or subjects of foreign countries.

Section 3 of the act prohibited corporations, other than those organized for the construction or operation of railroads, canals, or turnpikes, to acquire, hold, or own more than 5,000 acres of land in any of the territories of the United States. And no railroad, canal, or turnpike corporation might thereafter hold or own land in any territory, other than such as might be necessary for the proper operation of its railroad, canal, or turnpike, except such lands as might have been granted to it by act of Congress.

Section 4 provided that all property acquired, held, or owned in violation of the provisions of the act should be forfeited to the United States, and it was made the duty of the Attorney General to enforce the forfeiture by bill in equity or other proper process.

The act of 1897 is entitled: "An act to better define and regulate the rights of aliens to hold and own real estate in the territories."

Section 1 (8 USCA § 71) declares that no alien or person who is not a citizen of the United States, or who has not declared his intention to become a citizen, "shall acquire title to or own any land in any of the territories of the United States except as hereinafter provided." Then follows a provision recognizing rights secured by existing treaties.

In section 2 (8 USCA § 72) it is provided that the act shall not apply to land then owned in any of the territories of the United States by aliens, which was acquired on or before March 3, 1887, nor to an alien who shall become a bona fide resident, and that any alien who shall become such a resident, or shall have declared his intention to become a citizen, shall have the right to acquire and hold lands in any of the territories "upon the same terms as citizens of the United States: Provided, that if any such resident alien shall cease to be a bona fide resident of the United States then such alien shall have ten years from the time he ceases to be such bona fide resident in which to alienate such lands."

The last sentence in section 2 reads as follows: "This act shall not be construed to prevent any persons not citizens of the United States from acquiring or holding lots or parcels of lands in any incorporated or platted city, town, or village, or in any mine or mining claim, in any of the territories of the United States."

In section 3 (8 USCA § 73) it is declared that the act shall not prevent aliens from acquiring lands or any interests therein by inheritance or in the ordinary course of justice in the collection of debts, nor from acquiring liens on any real estate or any interest therein, nor from lending money and securing the same upon real estate or any interest therein, nor from enforcing any such lien; "nor from acquiring and holding title to such real estate, or any interest therein, upon which a lien may have *heretofore or may hereafter be fixed*, or upon which a loan of money may have been *heretofore* or *hereafter* may be made and secured [italics ours] : Provided, however, that all lands so acquired shall be sold within ten years after title shall be perfected in him under said sale or the same shall escheat to the United States and be forfeited as hereinafter provided."

Under section 4 (8 USCA § 74) any alien holding lands in any of the territories of the United States in contravention of the provisions of the act may convey his title thereto at any time before the institution of escheat proceedings, provided such conveyance is not made for the purpose and intent of evading the provisions of the act.

Section 5 (8 USCA § 75) makes it the duty of the Attorney General of the United States to institute escheat proceedings on behalf of the United States in respect of lands that are being held contrary to the provisions of the act; but before such proceedings are instituted he is required to give notice to the owner of such lands, and to all other persons having an interest in them.

Section 6 (8 USCA § 76) declares that, if it shall be determined upon the trial of such escheat proceedings that the lands are held contrary to the provisions of the act, the court shall render judgment condemning such lands and order them sold; the proceeds of the sale, after deducting costs, to be paid to the clerk of the court, "and said fund shall remain in the hands of such clerk for one year from the date of such payment, subject to the order of the alien owner of such lands, or his heirs or legal representatives. * * . * "

Section 7 (8 USCA § 77) provides that the act shall not apply to the District of Columbia, nor "authorize aliens to acquire title

from the United States to any of the public lands of the United States or to in any manner affect or change the laws regulating the disposal of the public lands of the United States."

Section 8 repeals all laws and parts of laws in conflict with the provisions of the act.

The Act of February 23, 1905 (33 Stat. 733 [8 USCA § 78]), provides: "That the act entitled 'An act to better define and regulate the rights of aliens to hold and own real estate in the territories,' approved March second, eighteen hundred and ninety-seven, be, and the same is hereby, amended so as to extend to aliens the same rights and privileges concerning the acquisition, holding, owning, and disposition of real estate in the District of Columbia as by that act are conferred upon them in respect of real estate in the territories of the United States."

Section 2 provides that all laws and parts of laws so far as they conflict with the provisions of the act are thereby repealed.

The purpose of the act of 1887, as declared in the preamble, was to restrict the ownership of real estate in the territories to American citizens; but even under that act a title held in contravention of its terms was not made subject to attack, except through escheat proceedings by the Attorney General of the United States. Johnson v. Elkins, 1 App. D. C. 430, 441. By the common law an alien might take by purchase (whether by grant or devise), and, although his title was held for the benefit of the state, it was good as against all persons but the sovereign. Fairfax's Devisee v. Hunter's Lessee, 7 Cranch, 603, 3 L. Ed. 453; Doe ex dem. Governeur v. Robertson, 11 Wheat. 332, 6 L. Ed. 488; Phillips v. Moore, 100 U. S. 208, 25 L. Ed. 603. See, also, 2 C. J. 1053, 1054; 1 R. C. L. 818, 819.

The act of 1897 provides that a title held in contravention of the terms of the act may be conveyed by the alien at any time before the institution of escheat proceedings, and, in the event of the institution of such proceedings and a determination that the lands are held contrary to the provisions of the act, the lands are to be sold and the proceeds are made subject to the order of the alien owner or his heirs or legal representatives. ■ "Congress in the exercise of its general and exclusive power of legislation over the District of Columbia" (Capital Traction Co.

v. Hof, 174 U. S. 1, 45, 19 S. Ct. 580, 597 (43 L. Ed. 873), by making applicable to the District the act of 1897, thereby superseded "all laws and parts of laws so far as they conflict with the provisions" of that act. It follows that, whether the devise of James H. McGill to the town of Bowmanville be subject to attack through escheat proceedings, it was not open to attack by appellants.

■ But, in our view, the devise was authorized by the act of 1897, made applicable by the act of 1905. The act of 1897 was much more liberal than the prior act, and, if the last sentence of section 2 is to be given an interpretation consistent with its plain terms, it must be held to have authorized this devise. The provision is: "This act shall not be construed to prevent *any persons* not citizens of the United States from *acquiring* or holding lots or parcels of lands in any incorporated or platted city, town, or village." (Italics ours). It is not disputed that an alien corporation is a "person" within the meaning of this act. See 2 C. J. 1043; Terry v. Imperial F. Ins. Co., Fed. Cas. No. 13,838, 3 Dill. 408; Barrowcliffe v. La Caisse Générale, 58 How. Prac. (N. Y.) 131.

Lands may be *acquired* by purchase, and the purchase may be by grant or devise. Fairfax's Devisee v. Hunter's Lessee, 7 Cranch, 603, 3 L. Ed. 453; Freitag v. Freitag, 47 App. D. C. 1, 5. Evidently the act of 1887 was intended to prevent the acquisition by aliens of large tracts of land in the Western territories. By 1897 conditions had materially changed; hence the more liberal provisions in the act of that year. It must be assumed that it was the then view of Congress that the acquisition by aliens of "lots or parcels of lands in any incorporated or platted city, town, or village" would not conflict with the public interest. In our view, no other reasonable conclusion can be drawn from the language used.

The title to the lots in question having vested in the corporation of the town of Bowmanville under the devise which we have sustained, it becomes unnecessary to determine the meaning of the provision in section 3 of the act of 1897, "that this act shall not prevent aliens from acquiring lands or any interests therein by inheritance."

The judgment is affirmed, with costs.

Affirmed.