STATE of Oklahoma ex rel. Jan Eric CARTWRIGHT, Attorney General of Oklahoma, Appellant,

v.

HILLCREST INVESTMENTS, LTD., Appellee.

No. 54906.

Supreme Court of Oklahoma.

March 10, 1981.

Rehearing Denied July 23, 1981.

Jan Eric Cartwright, Atty. Gen., Manville T. Buford, John Paul Johnson, John F. Percival, Asst. Attys. Gen., Oklahoma City, for appellant.

McAfee & Taft, P. C. by Joseph G. Rucks, John E. Sargent, Jr., Reid E. Robison, Oklahoma City, for appellee.

Denzil Garrison, Garrison, Brown & Carlson, Bartlesville, Robert H. Mitchell, Ryan, Cain, Mitchell & Muldowney, Oklahoma City, Cynthia Wicker, Stanley T. Kaleczyc, Stephen A. Bokat, Shannon D. DiBari, National Center Litigation Center, Washington, D.C., for amici curiae Oklahoma State Chamber of Commerce and Oklahomans for Economic Progress.

BARNES, Vice Chief Justice:

Alien ownership of land has, throughout our Anglo-Saxon legal history, been rigidly controlled.[1] At common law, aliens could own land until their alienage had been established in a judicial proceeding. Once their alienage was established, the land escheated to the Crown.[2] This common law rule was held to be part of American law in *Fairfax's Devisee v. Hunter's Lessee*, 11 U.S. (7 Cranch) 603, 3 L.Ed. 453 (1813). In *Hauenstein v. Lynham*, 100 U.S. 483, 25 L.Ed. 628 (1879), the United States Supreme Court held that the right to control

---

1. See, Note, Constitutional Law: Are Oklahoma's Restrictions on Alien Ownership of Land Constitutional? By Douglas A. Echols, 22 Okl. L.Rev. 144 (1979).

2. *Phillips v. Moore*, 100 U.S. 208, 25 L.Ed. 603 (1879); 5 Tiffany Real Property § 1377 (3d Ed. 1939).

alien ownership of land resided in the various States. In that opinion, Mr. Justice Swane stated:

> "The law of nations recognizing the liberty of every government to give to foreigners only such rights, touching immovable property within its territory, as it may see fit to concede. * * * In our country, this authority is primarily in the State where the property is situated." [Cites omitted] 100 U.S. 483 at 484.

The controversy before us today deals with the restrictions which the State of Oklahoma has placed upon alien ownership of land within Oklahoma. The material facts giving rise to the controversy are as follows: The Attorney General of the State of Oklahoma, Jan Eric Cartwright, pursuant to the duty imposed upon him by the provisions of 60 O.S. 1971 § 125, instituted a suit in behalf of the State of Oklahoma, praying for the escheat of several parcels of land which the Attorney General had reason to believe were being held by an alien in contravention of Article 22, Section 1, of the Oklahoma Constitution, and the provisions of 60 O.S. 1971 § 121 et seq. The defendant in that case, Hillcrest Investments, Ltd., an Alberta, Canada, corporation, filed an answer admitting that it did own some of the land described in the petition, but denied ownership of other parcels claiming to have conveyed such land prior to the commencement of the escheat action. Hillcrest admitted that it was a corporation formed under the laws of Alberta, Canada, in 1968, and that on October 14, 1977, it filed Articles of Domestication with the Secretary of State of Oklahoma, and that on that same date it received a Certificate of Authority to transact business in the State of Oklahoma. Additionally, Hillcrest affirmatively plead three affirmative defenses: (1) that under the provisions of Article 22, Section 2, of the Constitution of the State of Oklahoma, it was lawfully enti-

tled to own the land and property described in the petition; (2) that the State was acting to selectively enforce, in an unlawful manner, the laws of the State of Oklahoma, in a manner prejudicial to Hillcrest; (3) that the provisions of Article 22 of the Constitution of the State of Oklahoma violate the defendant's rights under the Constitution of the State of Oklahoma, the Constitution of the United States of America, and are contrary to the provisions of treaties properly entered into by the United States of America. After defendant's answer was filed, discovery was conducted,[3] and the case proceeded to trial.

After evidence was presented and argument of counsel was heard, the trial court issued a final order entering judgment for Hillcrest. In that journal entry, the court found that the restriction on alien ownership contained in Article 22, Section 1, of the Oklahoma Constitution, applied only to natural persons and *not* to corporations.

Having found that the restrictions on alien ownership contained in Article 22, Section 1, of the State's Constitution, did not apply to corporations, the court then determined that under the provisions of Article 22, Section 2, and various provisions of the Oklahoma Statutes, an alien corporation could own urban land within the State of Oklahoma, once it became domesticated. As Hillcrest was a domesticated alien corporation, the trial court concluded that the land owned by Hillcrest was not owned in contravention of the laws of the State of Oklahoma. Accordingly, the trial court entered judgment for Hillcrest, dismissing the State's petition. The State's appeal is from this order of the trial court.

## I.

■ The first issue presented on appeal is whether the trial court erred in holding that the restrictions on alien land ownership contained in Article 22, Section 1, of the

---

3. Prior to trial, the State served several interrogatories and other discovery instruments upon Hillcrest. Many of the interrogatories and other discovery instruments were objected to by Hillcrest, and the trial court in most instances sustained Hillcrest's objections. Al-

though the State contends that the trial court committed prejudicial error in ruling on several of these discovery motions, we need not today consider such assignments of error, as other issues raised on appeal are dispositive of the case before us.

Oklahoma Constitution, did not apply to corporations.

Article 22, Section 1, of the Oklahoma Constitution, provides:

> "No *alien or person* who is not a citizen of the United States, shall acquire title to or own land in this state, and the Legislature shall enact laws whereby *all persons not citizens of the United States,* and their heirs, *who may hereafter acquire real estate in this state by devise, descent, or otherwise, shall dispose of the same within five years upon condition of escheat or forfeiture to the State: Provided, This* shall not apply to *Indians born within the United States, nor to* aliens or persons not citizens of the United States who may become bona fide residents of this State: *and Provided Further, That this section shall not apply to lands now owned by aliens in this State.*" [Emphasis added]

Whether the restrictions on alien land ownership provided for in the above quoted section of Article 22 apply to corporations depends upon whether the drafters of the Oklahoma Constitution intended to include corporations within the term "alien" or "person". The trial court found that the inclusion of the phrase "and their heirs" in the section manifests an intention by the framers of the Constitution not to include corporations within the meaning of the word "person" because only natural persons have heirs. We cannot agree with the trial court's analysis. The mere inclusion of the phrase "and their heirs" does not negate the possibility that the framers of the Constitution intended that corporations should be included within the term "person", as the phrase "and their heirs" would logically have been included in the restriction in order to provide for those persons who are individuals and not corporate bodies. Thus, the inclusion of that phrase was not necessarily meant to exclude a class; the inclusion could have been made to provide for a subclass within a general class.

Accordingly, we hold that the inclusion of the phrase "and their heirs" is not a sufficient indication that the drafters of the Oklahoma Constitution intended to exclude corporations from the restrictions on alien land ownership contained in Article 22, Section 1, of the Oklahoma Constitution. This being the case, an analysis of the terms "person" and "alien", as they were understood, in law, at the time of the drafting of this State's Constitution, is essential in determining whether the drafters of the Constitution intended to include corporations within either term.

■ After an examination of the territorial statutory law which existed at the time the State Constitution was adopted, the case law which existed at the time the Constitution was adopted, and the propositions introduced at the Constitutional Convention, we conclude that the drafters of our Constitution did intend to include corporations within the terms "person" and "alien", as they were used in Section 1 of Article 22 of the Oklahoma Constitution.

Territorial statutes in effect at the time the Constitution was adopted specifically define "person" to include corporations, and such was the law in Oklahoma Territory for quite some time prior to the Constitutional Convention. Thus, the term "person" was, in law, understood to include corporations when the Constitutional Convention convened. The 1890 Statutes of Oklahoma, Section 2701 (incorrectly numbered 2601), provided:

> "The word 'person', except when used by way of contrast, includes not only human beings, but bodies politic or corporation."

The exact same language is set forth at Section 2676 of the 1893 Statutes of Oklahoma, and the 1903 Revised and Annotated Statutes of Oklahoma contain the same language at Section 2794. Therefore, we conclude that at the time the Constitution was adopted, the term "person" was generally understood to include corporations. Also see Section 6344 of the 1884 Statutes of Arkansas, which provides that, " * * * the word person includes a corporation as well as a natural person * * *."

It is also interesting to note that Proposition No. 367, relating to corporations, introduced at the Oklahoma Constitutional Convention by A. L. Hausam, provided that corporations should not, in law, be considered as artificial persons. It is of further interest to note that this proposal was never adopted by the Constitutional Convention.

Additionally, at the time the Constitution was adopted, existing case law construed the term "alien" to include corporations, so that a corporation created by the laws of a foreign country was an alien. In *Terry v. Imperial Fire Ins. Co.*, 23 F.Cas. 855 (Case No. 13,838), (C.C.D.Kans.1874), a Federal Circuit Court, in interpreting whether Section 12 of the Judiciary Act of 1789 (1 U.S. Statutes at Large 79), held that the term "alien" included a corporation created by the laws of a foreign country.[4]

Similarly, in *Barrowcliffe v. LaCaisse Generale*, 58 How.Pr. 131 (N.Y.1879), the New York Marine Court held that an action pending in the State court against an alien defendant could not be removed to the United States Circuit Court for trial under the existing Federal Rules Statute (which was virtually the same statute as that considered in *Terry, supra,*) if the plaintiff was also an alien. In reaching that ruling, the Court held that the defendant, a corporation created under the laws of the Republic of France, was an "alien". Thus, we see that at the time the Constitution was adopted, the term "alien" was, in law, held to include corporations created by the laws of a foreign country.

For the above stated reasons, we hold that the drafters of the Oklahoma Constitution meant to include corporations within the restrictions on alien ownership provided for at Section 1 of Article 22.

In so holding, we note that a like holding was reached by the U.S. Court of Appeals for the District of Columbia in *Larkin v. Washington Loan & Trust Co.*, 31 F.2d 635 (D.C.Cir.1929). In *Larkin*, the U.S. Appeals Court was construing an amended Federal Act of 1887, which restricted alien ownership of land in any of the territories of the United States or the District of Columbia. That Act, which applied to Oklahoma Territory at the time that our State Constitution was adopted, provided in part that:

"*No alien or person who is not a citizen of the United States* or who has not declared his intention to become a citizen of the United States in the manner provided by law *shall acquire title to or own any land in any of the Territories of the United States* except as hereinafter provided. * * * *"* (Mar. 3, 1877, ch. 340, § 1, 24 Stat. 476; Mar. 2, 1897, ch. 363, 29 Stat. 618, now codified at 48 U.S.C. § 1501.) [Emphasis added]

In *Larkin*, the U.S. Court of Appeals held that a devise to a foreign corporation was permissible, as Section 3 of the Amended Act provided that the Act "shall not prevent aliens from acquiring land or any interest therein by inheritance." At the time the *Larkin* court made its decision, the fact that an alien corporation was a person within the meaning of the Act was no longer in dispute, and the *Larkin* court, relying upon *Terry* and *Barrowcliffe, supra*, disposed of the issue in two sentences. Thus, we see at the time of the *Larkin* decision, the law was well settled that alien corporations were persons within the meaning of the above quoted Federal statute—which we note contains language almost identical to the oper-

---

4. Section 12 of the Judiciary Act of 1789 (1 U.S. Statutes at Large 79) provided in part:
   " * * * That if a suit be commenced in any state court against an alien, * * * and the matter in dispute exceeds the aforesaid sum or value of Five Hundred Dollars, * * * and the defendant shall, at the time of entering his appearance in such state court, file a petition for removal of the cause for trial into the next Circuit court, to be held in the district where the suit is pending, * *

and also for his there appearing and entering special bill in the cause, it shall be the duty of the state court to accept the surety and proceed no further in the cause, and any bill that may have been originally taken shall be discharged and said copies be entered as aforesaid, in such court of the United States, the cause shall there proceed in the same manner as if it had been brought there by original process."

ative provisions of Section 1 of Article 22 of our Constitution. The decision in *Larkin*, thus, bolsters our conclusion that the drafters of the Oklahoma Constitution meant to include alien corporations within the restrictions of Article 22, Section 1.

## II.

Having determined that the restrictions on alien land ownership provided by Article 22, Section 1, of the Oklahoma Constitution, apply to corporations, as well was natural persons, we must now determine whether the defendant corporation comes within the restrictions of that Constitutional provision. A resolution of this issue requires this Court to answer two questions: First, whether defendant corporation is an alien corporation, and, second, whether the defendant corporation is a *nonresident*.

■ An answer to the first inquiry is easily ascertained. The defendant admitted in its answer that it was a corporation which was formed under the laws of Alberta, Canada, and which exists by virtue of the laws of that country. It is well settled that corporations formed under the laws of foreign nations are alien corporations. See *Terry v. Imperial Fire Insurance Co., supra; Barrowcliffe v. LaCaisse Generale, etc., supra,* and *Larkin v. Washington Loan & Trust Co., supra.*

Because the defendant is an alien corporation, and because the restrictions of Article 22, Section 1, apply to alien corporations which are nonresidents, the determinative question then becomes whether the defendant corporation, for the purposes of restriction on alien land ownership, is a resident. If the defendant is a resident, the restrictions on alien ownership are not applicable, as the provisions of Article 22, Section 1, specifically provide that the restrictions do not apply to aliens or persons who become bona fide residents of this State.

## III.

■ Although for many purposes, corporate entities are considered persons, we must recognize that there are material differences between a corporate person and a natural person. For example, while it is possible for a corporate entity, which acts through its agents, servants and employees, to be in more than one place at a given time, a natural person enjoys no such luxury. Thus, natural persons are generally thought to have but one residence. Conversely, corporations may, under some circumstances and for some purposes, be considered residents of more than one jurisdiction. As the Supreme Court of Alabama noted, in its opinion in *Ex Parte State*, 241 Ala. 304, 2 So.2d 765 (1941), many courts support the view that for certain purposes a residence within a jurisdiction may be considered apart from the legal residence or domicile of a corporation, and that "foreign corporation" and "nonresident corporation" are not necessarily synonymous terms. In that opinion, the Alabama court stated:

"While it is true that if the term 'resident' relates to legal domicile, a foreign corporation is a resident only of the state of its incorporation, but the term is not universally used in this sense. *Many decisions, including a number of courts which approve the foregoing rule as technically correct and frequently controlling, support the view that for certain purposes at least a practical residence within the jurisdiction may be considered apart from the legal residence or domicile of the corporation, and that 'foreign corporation' and 'nonresident corporation' are not necessarily synonymous terms.* According to this view, a foreign corporation may so establish its business within the state in conformity with the local laws as to justify treatment as a resident for certain purposes, and whether or not a foreign corporation can be deemed to have acquired a residence in the local jurisdiction, other than that of its incorporation, depends upon the connection in which the question arises. *International Milling Co. v. Columbia Transp. Co.*, 292 U.S. 511, 54 S.Ct. 797, 78 L.Ed. 1396; 23 Am.Jur. pages 46–47–49, section 34, note 15, section 36, note 6, section 37; 13 Am. Jur. 281, section 148; 20 Corpus Juris Secundum, Corporations, § 1794, p. 18,

note 78; 14–A Corpus Juris 1226, note 12." [Emphasis added]

In *Board of Com'rs of Osborne County v. City of Osborne*, 104 Kan. 671, 180 P. 233 (1919), the Kansas Supreme Court, in determining whether a municipal corporation was a "resident owner" of certain lands, entitling it to protest tax levies, noted that:

" * * * Private corporations are deemed to be persons within the meaning of certain statutes, and by analogy they are deemed to be residents of the place where their corporate business is done."

Likewise, the St. Louis Court of Appeals for the State of Missouri, in addressing a venue issue, held that:

"A foreign corporation licensed to do business in the State is a resident of any County where it maintains an office or agent for the transaction of its usual and customary business." [5]

The Missouri Supreme Court came to the same conclusion in *State v. Cook*, 349 Mo. 225, 160 S.W.2d 687, 691 (1942). In *Brand v. Auto Service*, 75 N.J.L. 230, 67 A. 19, 20 (1907), the New Jersey Court reaffirmed the correctness of a prior decision holding that:

"A corporation that does some business in this State, and whose officers, upon whom process can be served at their homes, reside here, may be reasonably said to be a resident of this State. The situation of such a foreign corporation is nearly similar to a person having an established abode in this State, whose legal domicile is elsewhere. * * * "

This jurisdiction has long ago embraced the rationale expressed by our sister jurisdictions in the opinions quoted above. In *St. Louis & S.F.R. Co. v. Taliaferro*, 67 Okl. 37, 168 P. 788 (1917), this Court was faced with but one issue, that being whether the defendant, a railroad corporation organized under the laws of a sister State, doing business in this State, and having agents herein upon whom service of process may be had, was entitled to avail itself of the statute of limitations defense available un-

der Oklahoma law. In holding that corporations doing business in this State, which have agents in the State upon whom service may be had, can avail themselves of this State's statute of limitations, this Court stated:

"There are many decisions holding that a foreign corporation is a citizen, not a resident of the State, under whose law it was created. But there is quite a marked difference between residence and citizenship, and they are not necessarily correlative terms. A corporation can do nothing anywhere nor manifest its presence or being at all, except through its agents, its property, or its operation. For a foreign corporation, then, to be a non-resident of the State, or out of the State, in the sense of the statue [the statute of limitations being considered, 4660 Rev., Laws of Okl. 1910], it must be out of the State in such sense as to render it impracticable at all times to obtain service of process upon it. * * * * "

Having seen that this jurisdiction long ago recognized that foreign corporations (which includes alien corporations) may, for various purposes, be considered residents of this State, we next determine when or if an alien corporation may be considered a resident, for the purposes of the restrictions on alien land ownership.

■ After examining the Constitutional and statutory provisions dealing with the treatment of domesticated corporations, we conclude that a foreign corporation, once it has complied with the domestication procedures established under Oklahoma law, is, for the purposes of restrictions on alien land ownership, a resident of the State—and thus no longer subject to the restrictions of Article 22, Section 1, of the Oklahoma Constitution.

In so holding, we first note that the drafters of the Oklahoma Constitution provided for the domestication of foreign corporations. Article 9, Section 1, provides in part:

5. *Diehr v. Carey*, 238 Mo.App. 889, 191 S.W.2d 296, 300 (1945).

" * * * The term 'license' shall mean the authority under which *all foreign corporations* are permitted to transact business in this State." [Emphasis added]

Section 43 of that same Article, as originally enacted, and as amended, provided for the licensing—or domestication—of foreign corporations. As originally enacted, Section 43 of Article 9 required both foreign *and domestic corporations* to file a list of their stockholders, officers, and directors, with the residence and post office address of each, and the amount of stock held by each, with the Corporation Commission. As originally enacted, the Section also required every foreign corporation, before being licensed to do business in the State, to designate an agent residing in the State, upon whom service of summons or legal notice may be had. The Section also provided that suits could be maintained against a foreign corporation in the county where such agent could be found, or in the county of the residence of the plaintiff, or in the county where the cause of action arose.

As amended by the vote of the people, Article 9, Section 43, deals exclusively with foreign corporations. It provides:

"Every foreign corporation shall, before being licensed to do business in the State, designate an agent residing in the State; and service of summons or legal notice may be had on such designated agent and such other agents as now are or may hereafter be provided for by law. Suit may be maintained against a foreign corporation in the county where an agent of such corporation may be found, or in the county of the residence of plaintiff, or in the county where the cause of action may arise."

Section 44 of Article 9 provides that foreign corporations, authorized to conduct business in this State, are subject to the same restrictions and requirements as domestic corporations, and may, if the Legislature desires, be subject to additional restrictions. That Section provides:

"No foreign corporation shall be authorized to carry on in this State any business which a domestic corporation is prohibited from doing, or be relieved from compliance with any of the requirements made of a similar domestic corporation by the Constitution or laws of the State. Nothing in this article, however, shall restrict or limit the power of the Legislature to impose conditions under which foreign corporations may be licensed to do business in this State."

In examining Sections 1, 43, and 44, of Article 9, of the Oklahoma Constitution, we see that the drafters of the Constitution provided for the licensing—domestication— of *all* foreign corporations, which would include alien corporations. Additionally, the drafters of the Constitution provided that foreign corporations would have no advantage over domestic corporations, and were to operate under the same terms and conditions as domestic corporations. The drafters also provided that the Legislature was empowered to impose conditions under which foreign corporations could be licensed to do business. Thus, we conclude that the drafters of the Constitution did not intend for domesticated corporations to be subject to the land ownership restrictions imposed upon aliens, but, rather, left such decision to the Legislature. For this reason, we believe it was the intent of the drafters of the Constitution that domesticated corporations be considered "bona fide residents", as that term is used in Article 22, Section 1. In short, we hold that although alien corporations are subject to the restrictions on alien land ownership, such restrictions are no longer applicable once the alien corporation becomes a "bona fide resident of the State", and that such residency is accomplished when the alien corporation becomes a domesticated corporation in Oklahoma.

This Constitutional framework does, however, empower the Legislature to impose restrictions upon domesticated corporations. Thus, in order to determine whether the land in question was being held contra to Oklahoma law, we must, having concluded our review of Constitutional law, review the statutory law, in order to determine whether the Legislature, as empowered under the

provisions of Section 44 of Article 9, has imposed restrictions upon land ownership by alien domesticated corporations.

## IV.

Although the legislature is empowered to impose conditions upon foreign corporations which become licensed to do business in the State, the Legislature has not imposed additional restrictions upon domesticated foreign corporations, restricting their power to own land within incorporated towns and cities.

■ The Legislature, in drafting laws providing for the rights and obligations of "foreign corporations", and "domesticated corporations", included alien corporations within such legislation. The following definitions, set forth in 18 O.S.Supp.1979 § 1.2, show such to be the case:

"* * * *

"(2) 'Domestic corporation' means a corporation formed under the laws of this State.

"(3) 'Foreign corporation' means a corporation other than a domestic corporation.

"(4) 'Domesticated corporation' means a foreign corporation licensed to engage in or transact business in this State."

Under this definitional scheme, alien corporations come within the definition of foreign corporation, and thus within the term "domesticated corporation". This intent is also apparent at 18 O.S.1971 § 1.228, which provides for articles of domestication. In various parts, this Section specifically speaks in terms of corporations formed in other countries. Part of the information required to be furnished in articles of domestication is the name of the corporation, and the State, territory or *country* under the laws of which it was formed. Additionally, corporations are to furnish copies of the articles of incorporation duly certified by the proper public official of the State, territory, *or country* of its incorporation. Lastly, the final provision of Section 1.228 provides that one seeking domestication must furnish a "verified translation into English" of any part of the articles of incorporation, amendments, or laws, provided to be furnished, which is in a foreign language.

■ Thus, we see that the Legislature, in providing for the rights and privileges of foreign corporations, receiving a certificate of domestication, included within such classification alien corporations which receive certificates of domestication. With this in mind, there is no doubt that the Legislature has *not* sought to limit the power of domesticated alien corporations to own land within incorporated towns and cities.

Such can be seen in Title 18 § 1.199 of the Oklahoma Statutes (1971), which provides in part that:

"d. *A foreign corporation, upon receiving a certificate of domestication from the Secretary of State, shall enjoy the same rights and privileges as, but none greater than, a domestic corporation organized for the purposes set forth in the articles of domestication pursuant to which such certificate of domestication is issued* ; and, except as in this Act otherwise provided, shall be subject to the same duties, restrictions, penalties, and liabilities now or hereafter imposed upon a domestic corporation with like purpose and of like character." [Emphasis added]

Because foreign corporations, upon receiving a certificate of domestication, enjoy the same rights and privileges as domestic corporations, an analysis of the general powers common to all domestic corporations is important in determining the rights and privileges of a domesticated corporation. Such rights and privileges are provided for at 18 O.S.Supp.1979 § 1.19. That Section provides in part:

"Every domestic corporation shall, insofar as incidental to the transaction of its business or expedient for the attainment of the purposes stated in its articles of incorporation, have and possess the following general powers.

"* * * * * *

"(6) To acquire, by purchase, gift, will, or otherwise, and own, hold, control, en-

cumber, pledge, convey, sell or otherwise dispose of or deal in, in this state or elsewhere, any personal property or interest therein, and subject to the limitations prescribed by Article XXII, Section 2, of the Constitution of Oklahoma, and Sections 1.20 through 1.25 of this title, any real property or interest therein; * * *"

■ As domesticated corporations enjoy the same rights and privileges as domestic corporations, they enjoy the right to own property, subject only to the restriction of Article XXII, Section 2, of the Oklahoma Constitution, and the statutes enacted to codify that Constitutional provision. Article XXII, Section 2, of the Oklahoma Constitution, prohibits corporations from buying, acquiring, trading, or dealing in real estate *other than that located in an incorporated city and town*, providing:

"No corporation shall be created or licensed in this State for the purpose of buying, acquiring, trading, or dealing in real estate other than real estate located in incorporated cities and towns and as additions thereto; nor shall any corporation doing business in this State buy, acquire, trade, or deal in real estate for any purpose except such as may be located in such towns and cities and as additions to such towns and cities, and further except such as shall be necessary and proper for carrying on the business for which it was chartered or licensed; and provided further that under limitations prescribed by the legislature, any corporation may acquire real estate for lease or sale to any other corporation, if such latter corporation could have legally acquired the same in the first instance; nor shall any corporation be created or licensed to do business in this State for the purpose of acting as agent in buying and selling or leasing land for agricultural purposes; provided, however, that corporations shall not be precluded from taking mortgages on real estate to secure loans or debts, or from acquiring title thereto upon foreclosure of such mortgages or in the collection of debts, conditioned that such corporation or corporations shall not hold such real estate for a longer period than seven (7) years after acquiring such title; and provided, further, that this Section shall not apply to trust companies taking only the naked title to real estate in this State as a trustee, to be held solely as security for indebtedness pursuant to such trust; and provided, further, that no public service corporation shall hold any land, or the title thereof, in any way whatever in this State, except as the same shall be necessary for the transaction and operation of its business as such public service corporation."

A similar restriction is provided for at 18 O.S.1971 § 1.20. This Section is, for the most part, a codification of Article 22, Section 2, quoted above.[6] Neither the Consti-

---

**6.** Title 18 O.S.1971 § 1.20 provides:

"a. No corporation of any sort, whether coming within the general scope of this Act or not, shall, except as herein provided, own, hold, or take any real estate located in this State outside of any incorporated city or town, or any addition thereto.

"b. Nothing in this Act shall be construed as prohibiting the owning, holding, or taking of:

"(1) Such real estate as is necessary and proper for carrying on the business for which any corporation has been lawfully formed or domesticated in this State;

"(2) Naked title to real estate by any trust company as trustee, to be held solely as security for indebtedness pursuant to such trust or as trustee of an express or testamentary trust for the benefit of natural persons;

"(3) Any real estate mortgage held by any corporation to secure any loan or debt;

"(4) Any real estate acquired by any corporation upon the foreclosure of any real estate mortgage held by such corporation or acquired in the collection of any loan or debt due such corporation, except as hereinafter provided; or

"(5) Any real estate acquired by any corporation for lease or sale to any other corporation, if such latter corporation could have legally acquired the same in the first instance.

"c. Any real estate located in this State outside of any incorporated city or town, or any addition thereto, acquired by any corporation by mortgage foreclosure or in collection of debt as provided in Subsection b(4) hereof, shall be sold and disposed of within seven (7) years from such acquisition.

tutional provision nor the statute restricts the right of domesticated alien corporations from owning land within incorporated cities or towns. Thus, from our study of both the Constitutional and statutory provisions, we conclude that alien corporations, which become domesticated within the State of Oklahoma, may lawfully acquire title to or own land within incorporated towns and cities. Nothing in our holding today, however, should be taken to mean that such rights would be afforded a sham corporation, set up by individual aliens solely to avoid the restrictions of Article XXII, Section 1, when such entities are not in fact operated as legitimate corporations.

■ For the above stated reasons, we hold that the trial court was correct in ruling that the defendant below, Hillcrest Investments, Ltd., could, by virtue of its domestication, own real property within the State of Oklahoma, located within an incorporated town or city. As there were no allegations in the escheat petition that the defendant corporation was a sham corporation established solely to avoid the restrictions of Article XXII, Section 1, the trial court was correct in granting judgment for the defendant corporation, on the basis that it had become a domesticated corporation and issued a certificate of domestication from the Secretary of State.

AFFIRMED.

IRWIN, C. J., and WILLIAMS, HODGES, LAVENDER, HARGRAVE and OPALA, JJ., concur.

SIMMS and DOOLIN, JJ., dissent.

SIMMS, Justice, dissenting.

I respectfully dissent. This Canadian corporation is not a bona fide resident of Oklahoma. It is—and always will be—an alien. Being domesticated to do business in Oklahoma does not change its legal residence.

"d. This Section shall not apply to religious, educational, charitable or eleemosynary corporations, upon taxable property."

1. *Bank of Augusta v. Earle*, 13 Pet. 519, 10 L.Ed. 274, 308 (1839).

It is useful to remember that corporations do not exist in nature. They are artificial beings which exist only by force of the laws of their creating jurisdiction.

Unlike a natural person, a corporation cannot change its domicile at will. It has no power to do so; it exists only by reason of the law of its origin. While it may transact business elsewhere, it cannot change its domicile. A corporation "must dwell in the place of its creation, and cannot migrate to another sovereignty." [1] "A corporation cannot change its residence or its citizenship. It can have its legal home only at the place where it is located by or under the authority of its charter; but it may by its agents transact business anywhere, unless prohibited by its charter or excluded by local laws." [2] By doing business away from their legal residence, corporations do not change their citizenship, but simply extend the field of their operations. They reside at home, but do business abroad." [3] See, e. g., *Shaw v. Quincy*, 145 U.S. 444, 12 S.Ct. 935, 36 L.Ed. 768 (1892); *Cream of Wheat Co. v. Grand Forks County*, 253 U.S. 325, 40 S.Ct. 558, 64 L.Ed. 931 (1919); *Seaboard Rice Milling Co. v. Chicago, R.I. & P.R. Co.*, 270 U.S. 363, 46 S.Ct. 247, 70 L.Ed. 633 (1925); *Johnson Oil Ref. Co. v. Oklahoma*, 290 U.S. 158, 54 S.Ct. 152, 78 L.Ed. 238 (1933); *First Bank Stock Corp. v. Minnesota*, 301 U.S. 234, 57 S.Ct. 677, 81 L.Ed. 1061, 113 A.L.R. 228 (1936); *Myatt v. Ponca City Land & Improvement Co.*, 14 Okl. 189, 78 P. 185, 194–197 (1903); 20 C.J.S. Corporations §§ 1794, et seq.; 36 Am.Jur.2d Foreign Corporations, §§ 32, et seq.

This entity, which was created by the laws of Canada, cannot be reshaped or extended by the Supreme Court of Oklahoma.

It is true that for certain purposes—primarily taxation—the law has recognized

2. *Ex parte Schollenberger*, 96 U.S. 369, 377, 24 L.Ed. 853 (1878).

3. *Baltimore & Ohio R.Co. v. Koontz*, 104 U.S. 5, 11, 26 L.Ed. 643 (1881).

that foreign corporations may have a "commercial domicile" or "business situs" *apart from* their legal residences. These decisions turn on policy considerations and often employ the use of legal fictions to support the desired result. See, e. g., *First Bank Stock Corp. v. Minnesota, supra*, 301 U.S. 234, 240–241, 57 S.Ct. 677, 679–80, 81 L.Ed. 1061; *Wheeling Steel Corp. v. Fox*, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 1143. See, also, *Magna Oil & Refining Co. v. Uncle Sam Oil Co.*, 81 Okl. 8, 196 P. 142 (1921).

We do not have a policy decision to make here, nor are we concerned with anything but real and actual legal residence. The framers of the Oklahoma Constitution clearly and explicitly set forth the will of the people to be free of economic and political influence of aliens. The Constitution makes an alien who is not a bona fide resident of Oklahoma incapable of owning land. Is an alien corporation a *bona fide resident* merely because it is domesticated to do business here? The obvious answer is no.

If the citizens of Oklahoma now wish to change their Constitution to allow alien land ownership, they may do so. It is not a proper function of this Court to do that for them. The majority's warning about "sham" corporations is meaningless. Under its opinion, any alien who wants to own land in Oklahoma may now do so by merely forming a corporation and domesticating it here.

I respectfully submit the majority's decision is unsupported by the law and logic.

I am authorized to state that Justice DOOLIN joins with me in this dissent.